# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 22-250V

|  |  |
|---|---|
| DANA BERTUCCI, on behalf of D.A., a minor, | Chief Special Master Corcoran |
| Petitioner, |  |
| v. | Filed: March 23, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Jonathan Svitak,* Shannon Law Group, P.C., Woodbridge, IL, for Petitioner.

*Ryan P. Miller,* U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION DISMISSING CASE[1]

On March 4, 2022, Dana Bertucci, on behalf of her son, D.A., a minor, filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act" or "Act").[2] Petitioner alleges that a measles, mumps, rubella, varicella ("MMRV") vaccine administered to D.A. on March 7, 2019, caused him to develop "a primary disseminated [h]erpes zoster infection." Petition at 1.

Respondent has asserted that Petitioner has provided insufficient proof of severity of injury—a requirement applicable to all Vaccine Act claims. *See* Section 11(c)(1)(D)(i). I therefore ordered the parties to brief that issue. *See* Petitioner's Show Cause Response, dated October 14,

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

2025 (ECF No. 36) ("Br."); Respondent's Reply, dated October 30, 2025 (ECF No. 37) ("Opp."). Now, for the reasons set forth below, I dismiss the matter for Petitioner's inability to preponderantly establish severity.

## I.    Fact Background

*Pre-Vaccination History*

D.A. was born on February 7, 2015 (and was thus four years old at the time of the vaccinations at issue). He had a complex medical history prior to vaccination. Ex. 1. D.A. had multiple congenital anomalies at birth, and required many surgeries beginning at a very young age. Ex. 11 at 502–03.[3] D.A.'s newborn screening deemed him "borderline abnormal for [severe combined immunodeficiency . . .]" (although the record does not ultimately suggest D.A. was diagnosed with immunodeficiency). *Id.*

In his early years, D.A. received extensive treatment to address his chronic health issues. *See, e.g.*, Ex. 5 at 15, 60 (reflecting hypospadias), and 79 (reflecting D.A. suffered from congenital hypothyroidism); Ex. 11 at 13 (colostomy placement on February 10, 2015), 509–10 (February 2015 urethral stenosis/atresia and vesicostomy, and September 2016 revision for prolapse), 4649 (noting on August 22, 2015, that D.A. suffered from motor delay), and 7087 (reflecting a history of pulmonary hypertension). D.A. also had a right kidney transplant in November 2017, and remained an in-patient during this time due to post-operation complications. Ex. 11 at 26. (As noted below, some medications and treatments D.A. subsequently received were intended to address the risk of organ rejection).

The need for repeated treatment for D.A.'s health concerns continued into 2018–19. *See, e.g.*, Ex. 3 at 25 (July 5, 2018 visit for a UTI and fever); Ex. 3. at 21–24 (August 9, 2018, well-child visit for URI and "lots of skin tags from meds for transplant she was told"); Ex. 3 at 17–19 (October 5, 2018 visit for nasal congestion and a cough); Ex. 3 at 12–16 (January 10, 2019 visit for nasal congestion and a cough). As of his January 10, 2019, visit with his pediatrician, he was receiving speech therapy, physical therapy, and occupational therapy. *Id.* at 13.

*Vaccination and Herpes Zoster Infection*

On March 7, 2019, D.A. had a well visit with his pediatrician. Ex. 3 at 6–11. He had not been sleeping well due to a cough, and was taking medication for his treatment. *Id.* at 7. He was

---

[3] In particular, D.A. was born with an imperforate anus, multicystic dysplastic kidneys, absent ductus venosus, and was referred to as a "critically ill infant." Ex. 11 at 503. He needed a diverting colostomy due to his imperforate anus. *Id.*

also receiving an antibiotic for a *Clostridioides difficile* ("c. diff") infection,[4] but was still experiencing gastrointestinal ("GI") bleeding. *Id*. Examination revealed the presence of "scattered molloscum" (a benign viral infection) on his skin.  *Id*. at 8. At this time D.A. received several vaccines, including the MMRV at issue. Ex. 11 at 6, 9; Ex. 3 at 6. 3. There is no medical record evidence of any immediate reaction to the receipt of this vaccine.

On April 19, 2019 (now approximately six weeks post-vaccination), D.A. was treated for a rash on his face and chest thought to be the product of "anti-rejection medication." Ex. 3 at 1–3. The history taken at this visit notes that D.A. had a chronic rash (itchy bumps and redness) on his face which had worsened in the past two days. *Id*. Petitioner also noted that the week prior, D.A. had been having trouble sleeping, and was up at night crying. *Id*.

On exam, D.A. had no fever, cough, diarrhea, or change in fluids, and no decreased activity was reported. Ex. 3 at 2. His rash was characterized by clusters of papules, some fleshy with umbilication, others excoriated small scabs on the bridge of his nose, but D.A. had no vesicles or pustules. *Id*. at 3. The impression was that he had increased number of molluscum. D.A. was assessed with dermatitis featuring increased molluscum, deemed a byproduct of D.A.'s immunosuppressive medications, and he was prescribed a topical antibiotic. *Id*.

(Petitioner has filed seven pages of photos of a child as Exhibit 5, although none have been authenticated precisely (*i.e.* with indicia of time-stamped metadata). See Ex. 5. The first three photos appear to show a child, presumably D.A., with what appears to be an acute infection or rash on his face. Ex. 5 at 1–3. The last four show the same child, either before the rash or after the rash, having recovered. *Id*. at 4–7).

A few days later (April 22, 2019), D.A. was seen in the emergency room for treatment of a rash and fussiness. Ex. 4 at 5. The history taken at this time reports that a week before (which if literally true would be beginning on April 15, 2019), D.A. had developed a small rash over his face that had spread and was very pruritic, and that he was now crying more than normal and not sleeping. *Id.* D.A. had no known personal history of herpes simplex virus ("HSV") either (although Petitioner reported having experienced cold sores—and later it was reported the family had been experiencing a viral infection). *Id.*; Ex. 4 at 54.

On examination, D.A. was afebrile and appeared well, other than his rash (characterized by multiple papules over the left side of his face, with surrounding excoriations and crusting, and papules over his left neck and back, anterior chest, left hand, and abdomen). Ex. 4 at 8. A consulted

---

[4] Clostridium difficile, or C. difficile, is a bacteria species that is part of the normal colon flora in infants and some adults; it produces a toxin that can cause inflammation that may result in colitis and diarrhea. *Clostridium Difficile*, Dorland's                      Online                      Med.                      Dictionary, https://www.dorlandsonline.com/dorland/definition?id=65630&searchterm=Clostridium%20difficile  (last   visited Mar. 19, 2026).

dermatologist expressed the view that D.A. could have HSV or shingles, recommended intravenous ("IV") antivirals and testing, and D.A. was subsequently admitted to the hospital. *Id.* A swab of an unroofed vesicle was positive for varicella zoster virus ("VZV"). *Id*. at 54, 57. D.A. was started on an IV transmission of acyclovir (an antiviral used to treat herpes infections), although the dermatologist allowed the rash could merely reflect molloscum contagiosum. *Id*. at 26, 57.

D.A. remained hospitalized at Lurie Children's Hospital until April 26, 2019. Ex. 4 at 26. While being treated, it was noted that D.A. had been afebrile with normal vital signs, although he displayed lesions on his left anterior chest, torso and left lateral aspect of his nose and cheek. Ex. 4 at 23. An infectious disease specialist was consulted about D.A. on April 23rd, and was informed about the same general onset of rash (anywhere from April 13th to 15th). Ex. 4 at 48. Taking into account the positive VZV infection result from testing of a rash lesion, it was proposed that D.A. was experiencing a disseminated VZV infection. *Id*. D.A.'s blood culture was negative, and his white blood cells were slightly low at 5.23. *Id*. at 66, 77.

On April 24, 2019, D.A. developed a fever. Ex. 4 at 39. D.A. was thereafter seen a second time by an infectious disease physician and testing had revealed a possible urinary tract infection, but the rash appeared to be improving, as D.A.'s lesions were "nearly fully crusted over," with no evidence of new lesions. *Id*. at 45, 47. Similar observations of his general improvement were made the following day. *Id.* at 38. When discharged on April 26th, D.A. had a temperature of 99, and a normal exam—except for a vesiculopapular rash with mostly crusted over lesions present on his left anterior chest, torso, and the left lateral aspect of his nose and cheek, as well as excoriations over his chest and abdomen. *Id.* at 2. He was instructed to continue acyclovir for four more days, plus to use a topical antibiotic. *Id.*

*Treatment After April 2019 Hospitalization*

Following the late-April 2019 discharge, D.A. had multiple medical visits over the next several months and years—but with no mention of any ongoing rash or associated sequelae. *See, e.g.*, Ex. 4 at 135, 185 (May 2, 2019 IV iron infusion and phone discussion of a GI bleed); Ex. 11 at 10915 (June 5, 2019 labs), 10934 (June 24, 2019 PT evaluation for decreased strength and posture and fatigue with notations that he first walked at two years old and could not run because he could not unlock his knees), 10956 (July 30, 2019 labs showing elevated BUN of 46 mg/dl (normal is up to 18)), 11005 (August 2, 2019 iron infusion for anemia),11023 (August 8, 2019 visit for URI symptoms and chest pain with a chest x-ray without acute changes), 11078 (August 24, 2019 emergency room visit for increased bloody output in colostomy bag and creatinine trending upward, with no rash on exam), 11159 (August 28, 2019 renal biopsy due to rising creatinine, showing evidence of acute rejection with possible resolving intraparenchymal infection, particularly given recurrent UTIs), 11217, 11229 (September 4, 2019 admission for possible renal infection/pyelonephritis and to start IV steroids), 11441 (November 21, 2019

4

nephrology follow-up), 11536 (December 17, 2019 visit for chronic and acute GI issues),11561, and 11577 (December 26, 2019 admission for hyponatremia correction).

None of these 2019 records contain any treater comments associating the April rash with subsequent illnesses or concerns. D.A.'S VZV infection was in fact referenced only at a treatment visit in July 2019 following up on his kidney transplant. See Ex. 11 at 10,985. He was at this time generally noted to be recovering well, although his many comorbidities were referenced. The notes from this follow-up also, however, memorialized his history of "varicella lesions" after "inadvertently" receiving the varicella vaccine in 2019, with the recommendation that he not receive live vaccines in the future. *Id.*

The same absence of subsequent sequelae or residual effects from the VZV infection is evident in records for treatment events from 2020–21. *See, e.g.*, Ex. 11 at 9 (December 28, 2022 receipt of the Menactra vaccination), 11652 (January 16, 2020 admission for compensated septic shock and acute kidney injury), 11853, 11888 (February 3–5, 2020 admission for anorectoplasty for kidney transplant with rejection), 12872 (February 22, 2021 electrocardiogram), 13209 (May 6, 2021 admission for pancreatitis), and 12448–49 (July 1, 2021 follow-up with renal care providers who indicated D.A. might require another transplant in the future); On October 21, 2024, D.A. had his second kidney transplant (Ex. 11 at 18808), and last winter was reported to be otherwise doing well. Ex. 11 at 19264.

*Other Relevant Evidence*

In 2025, Petitioner filed four pages of additional evidence comprised of two photos (Ex. 13 (ECF No. 35-2), plus a supplemental declaration (Ex. 12 (ECF No. 35-1)). The photographs were submitted without metadata but contain a Bates footer imposed that reads: "Ex. 13 - Photos of D.A. on 10.13.2025." Ex. 13 at 1–2. They are blurry but depict a portion of a child's face, with faint markings on his face that vary in color, size and shape—including one on his nose that appears to be an indentation; one above the left eyebrow, that is a subtle mark that appears slightly darker than the rest of his skin; a pinkish mark under his right eye; a pearly-colored bump above his left lip, near his nose; and possibly two-to-three, slightly darker spots around his left eye. *See* Ex. 13. These marks are barely noticeable and do not appear inconsistent with any typical discoloration that may appear on a child's face, particularly since any detectable spots or marks in these photos are varied in type, color, and size, and therefore cannot clearly be inferred to have been caused by the same thing, such as allegedly vaccine-caused VZV infection. *Id.*

Petitioner also filed two affidavits attesting to the health of D.A. before and after receiving the MMRV vaccine. Ex. 1, filed on Mar. 4, 2022 (ECF No. 1-3); Ex. 12, dated Oct. 14, 2025 (ECF No. 35-1). The affidavits affirm that D.A. suffered from a myriad of medical complications for which he was receiving immunosuppressive therapy, but deny the existence of any visible lesions on D.A.'s face or chest before receiving the MMRV vaccine. Ex. 1 at 1; Ex. 12 at 1. On or around

5

April 12, 2019, roughly a month after D.A.'s MMRV vaccination, Petitioner and her husband noticed a developing rash on D.A.'s skin that continued to develop to D.A.'s back, face, neck, and chest over the course of a week. Ex. 1 at 1; Ex. 12 at 1. D.A. was taken to Erie West Town Health Center and subsequently Lurie's Children's Hospital which confirmed the lesions the result of the varicella zoster infection, which Petitioner asserts was caused by the MMRV vaccine. Ex. 1 at 1– 2. As of October 14, 2025, Petitioner affirms that D.A. continues to have permanent, visible scarring on his face from his lesions as shown by the photos she filed. Ex. 12 at 2 (referencing Ex. 13).

These more recently-filed items of evidence are not, however, corroborated by filed any records from a dermatologist or other provider stating that the depicted markings are associated with a prior VZV infection, let alone when that infection began (or why the markings would linger).

## II.    Procedural History

As noted, this matter was initiated in the spring of 2022. It remained in "pre-assignment review" for over two years, while the Petitioner endeavored to obtain and file medical records necessary to substantiate the claim, but was finally assigned to me in June 2024. Respondent's Rule 4(c) Report was filed in July 2025, and it raised the severity objection that is the subject of this decision. ECF No. 33. I subsequently set a briefing schedule, and the parties completed their filings by the end of October 2025.

## III.    Parties' Arguments

*Petitioner*

Petitioner argues that the record evidence establishes D.A.'s alleged vaccine injury satisfies the Vaccine Act's severity requirement by a preponderance of the evidence. Br. at 5. To meet the severity requirement, Petitioner holds that she must show that D.A.'s lesions, and subsequent scarring, lasted at least six months from when they allegedly started on April 12, 2019. *Id.* Therefore, Petitioner's must show that D.A.'s scars remained through October 12, 2019. *Id.* Petitioner claims she has done this through a variety of evidence, including medical records, photographs taken more than five years after D.A.'s VZV infection, and affidavit testimony that show D.A. currently suffers from permanent scarring. *See id.* at 6 (referencing Ex. 1; Ex. 4 at 1– 57; Ex. 5 at 5–7; Ex. 12; Ex. 13).

In response to Respondent's speculation that any scarring on D.A.'s face could be due to his molluscum condition, Petitioner once again points to D.A.'s medical records and affidavits. Br. at 6. A consult note from D.A.'s April 2019 hospital stay, for example, memorializes the fact that D.A.'s father informed doctors that D.A. had never experienced such a rash due to his

6

molluscum. *Id.* (citing Ex. 4 at 55). Petitioner's affidavits also affirm that D.A. did not have facial scarring prior to the vaccine. *Id.* (discussing Ex. 12 at 1). Further, D.A.'s dermatologist expressed the view that the possibility that D.A.'s lesions were due to his molluscum was "less clinically consistent" than from VZV or HSV. *Id.* (citing Ex. 4 at 55). Therefore, Petitioner concludes that it is clear that the lesions appearing on D.A.'s face were likely caused by his VZV infection, and D.A.'s scars—that have perpetuated for years—were a result of those lesions. *Id.*

### *Respondent*

Respondent argues that there is insufficient evidence to establish that D.A.'s lesions and scarring lasted six months. Opp. at 13. Rather, D.A.'s rash and any other residual effects of his VZV infection resolved around April 26, 2019, when he was discharged from the hospital. *Id.* (citing Ex. 4 at 2). This is because there is no further mention of ongoing rash, lesion, or scarring in D.A.'s medical record past this date—except to note that it happened in his medical history. *Id.* (citing Ex. 11 at 10985). Petitioner had frequent medical care following discharge, and there was no mention, by either Petitioner of D.A.'s medical providers that mention ongoing sequelae or scarring. *Id.* at 13–14. The only evidence of residual effects past April 26, 2019, is from Petitioner's affidavits and the photos submitted. *Id.* But the photos are insufficient to satisfy the Act's severity requirement because they are undated, lack metadata, and were not filed with a statement of a medical provider detailing what they depict. *Id.* at 14.

Petitioner has also not provided enough medical evidence to connect any persistent scarring on D.A.'s face to his VZV infection. Opp. at 14–15. Any lesions and scarring D.A. may be experiencing could be from D.A.'s molluscum infection—which has been noted to be chronic, and has affected his face. *Id.* at 14 (citing Ex. 3 at 2). Respondent notes that the lack of medical records supporting Petitioner's claim make it impossible from a special master to conclude that a vaccine-related injury has occurred, because the only evidence in favor of severity are based solely upon the claims of petitioner. *Id.* at 15 citing (Section 13(a)(1); *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993)).

## IV.    Applicable Legal Standards

Petitioners carry the burden of establishing the matters required in the petition by a preponderance of the evidence. Section 13(a)(1)(A). One such requirement is "documentation demonstrating that [the petitioner][5] ... suffered the *residual effects or complications* of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i) (emphasis added); *see also Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must

---

[5] Or other vaccinee, e.g., a minor or other person who is unable to represent his or her own interests, on behalf of whom the claim is brought.

not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception is the alternative added in 2000, a showing that the vaccine injury required inpatient hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at 42 U.S.C. § 300aa–11(c)(1)(D)(iii)). This exception was added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months. *Id.*

A few years ago, the Federal Circuit clarified the considerations relevant to analysis of severity. *See generally Wright v. Sec'y of Health & Hum. Servs.,* 22 F.4th 999 (Fed. Cir. 2022). In *Wright,* the Circuit construed the phrase "residual effects" to mean "something remaining or left behind from a vaccine injury—that "never goes away or that *recurs* after the original illness," in connection with an injury's *somatic* nature. *Id.* at 1005 (emphasis added). Such residual effects must also reflect "conditions within the patient"—not evidence of clinical/lab testing (otherwise not itself detrimental to a patient's health) or medical monitoring to evaluate *if* those conditions even exist. *Id.* at 1006.[6]

The Act prohibits determinations "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras*, 993 F.2d at 1528. *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and

[6] There is of course a "surgical intervention" exception, where an alleged vaccine injury can be deemed sufficiently severe even in the absence of six months of sequelae. Section 11(c)(1)(D). And, in some instances, intrusive diagnostic measures have been deemed to meet this exception, despite the fact that the procedure at issue was not directly aimed at ameliorating the relevant condition. *Leming v. Sec'y of Health & Hum. Servs.*, 98 F.4th 1107, 1112*–13 (Fed. Cir. 2024). But this case does not present evidence of any surgical intervention that occurred within six months of D.A.'s rash onset that was either intended to treat the VZV infection, or even to evaluate the rash's nature.

8

reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

## ANALYSIS

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that D.A. suffered residual effects of his alleged herpes zoster infection beyond mid-October 17, 2019 (assuming an onset of sometime in the middle of April 2019—anywhere between April 13th to 15th). However, the record as it currently stands establishes sequelae only through late April 2019. At most, a single record from *July 2019* suggests a treater opined that the rash was attributable to the vaccine—but not that at that time the rash continued to exist or had resulted in any secondary sequelae. And even evidence of a rash in July 2019 still leaves three months before the severity cut-off.

Petitioner has not substantiated the existence of residual effects of D.A.'s alleged vaccine-caused VZV infection with any other evidence warranting weight. This includes the recently-filed photographs. This category of evidence has largely not been adequately authenticated, making it difficult to deem foundationally its overall probative value. But even if the photos are authentic and accurately depict D.A.'s skin "status" as of their alleged dates, the contents of the photos are very difficult to ascribe to the purported VZV infection and rash experienced in 2019—nearly *six years before* the photos were taken (in some cases). And this evidence is not itself corroborated with medical record proof that these alleged images of persistent rash are in fact likely associated with the April 2019 event. At bottom, too much time has passed, with no evidence of treatment for the rash (and in a record *replete* with instances in which D.A. was treated for significantly more serious concerns—thus establishing that his parents would not neglect health concerns of any kind where he is concerned).

I have in other cases noted the possibility that a varicella-containing vaccine could cause or reactivate a VZV infection.[7] *See,* e.g., *Schilling v. Sec'y of Health & Hum. Servs.*, No. 16-527V, 2022 WL 1101597, at *17–18 (Fed. Cl. Spec, Mstr. Mar. 17, 2022). That kind of infection could have a variety of sequelae not limited to merely a rash. *Riley v. Sec'y of Health & Hum. Servs.*, No. 15-104V, 2021 WL 4592821, at *18 (Fed. Cl. Spec. Mstr. Aug. 31, 2021) (noting that the symptoms of a VZV infection include fever, malaise, rash, secondary bacterial infections, and neurologic impacts such as encephalitis). In this case, however, the only evidence of the VZV reaction *was* the rash, and it appears on this record to have been wholly self-limiting. Thus, severity cannot be met (assuming the vaccine was even causal of the rash).

---

[7] Indeed, there is a Table claim covering that precise kind of claim. § 14(a)(X)(B)–(C).

9

## CONCLUSION

The Vaccine Act prohibits me from finding a petitioner entitled to compensation based upon a petitioner's claims alone. Section 13(a). To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence that D.A. suffered the residual effects of her alleged injury for more than six months or suffered an in hospital surgical intervention. Section 11(c)(1)(D).

Petitioner was informed that failure to provide preponderant to satisfy the Vaccine Act's severity requirement would be treated as either a failure to prosecute this claim or as an inability to provide supporting documentation for this claim. Accordingly, this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[8]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.